**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**ALEXIS A. LIEN, OSB #110569**
alexis.lien@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>**1971 CHEVROLET CHEVELLE; 2006 DODGE COMMERCIAL SPRINTER VAN; 2012 CADILLAC CTS; 1993 HARLEY DAVIDSON FXRP-W; 2004 HARLEY DAVIDSON XL 1200C,** *in rem***,**<br><br>    Defendants. | Case No.  3:20-cv-00199-BR<br><br>**COMPLAINT,** *in rem***, FOR FORFEITURE** |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Alexis A. Lien, Assistant United States Attorney, for its Complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

**Complaint** *in rem* **for Forfeiture**                                                                                                     **Page 1**

II.

Defendants, *in rem*, 1971 Chevrolet Chevelle; 2006 Dodge Commercial Sprinter Van; 2012 Cadillac CTS; 1993 Harley Davidson FXRP-W; and 2004 Harley Davidson XL 1200C, were seized in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, 1971 Chevrolet Chevelle; 2006 Dodge Commercial Sprinter Van; 2012 Cadillac CTS; 1993 Harley Davidson FXRP-W; and 2004 Harley Davidson XL 1200C, represent proceeds traceable to an exchange for controlled substances or conveyances used or intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances, in violation of 21 U.S.C. § 801, *et. seq.*, and are forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(4) and (6), as more particularly set forth in the Declaration of Task Force Officer Mathew Fromme, Federal Bureau of Investigation, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of Defendants, *in rem*, 1971 Chevrolet Chevelle; 2006 Dodge Commercial Sprinter Van; 2012 Cadillac CTS; 1993 Harley Davidson FXRP-W; and 2004 Harley Davidson XL 1200C, that due notice be given to all interested persons to appear and show cause why forfeiture of these Defendants, *in rem*, should not be decreed; that due proceedings be had thereon; that these

///
///
///

**Complaint *in rem* for Forfeiture**                                                                                           **Page 2**

Defendants be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this action.

Dated: February 6, 2020.

        Respectfully submitted,

        BILLY J. WILLIAMS
        United States Attorney

        */s/ Alexis A. Lien*
        ALEXIS A. LIEN

## VERIFICATION

I, MATHEW FROMME, declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Task Force Officer with the Federal Bureau of Investigation, and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

<u>*/s/ Mathew Fromme*</u>
MATHEW FROMME
Task Force Officer
Federal Bureau of Investigation

## DECLARATION OF MATHEW FROMME

I, Mathew Fromme, do hereby declare:

## PURPOSE OF THIS DECLARATION

1. This declaration is submitted in support of a complaint for forfeiture. The information contained in this declaration is based on an investigation conducted by Federal Bureau of Investigation (FBI) Task Force Officer (TFO) and Detective with the Oregon State Police (OSP) Mathew Fromme, which will show that the 1971 Chevrolet Chevelle, 2006 Dodge Commercial Sprinter Van, 2012 Cadillac CTS, 1993 Harley Davidson FXRP-W, and 2004 Harley Davidson XL 1200C seized during the execution of a search warrant at 16717 Southeast Amisigger Road, Boring, Oregon are subject to forfeiture pursuant to 21 U.S.C § 881(a)(4) and (6), as conveyances used or intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances, or proceeds traceable to an exchange for a controlled substance, in violation of 21 U.S.C. § 801, *et. seq*. Information contained in this declaration is based upon my personal observations, training, and experience, and that of other law enforcement officers. This declaration does not contain each and every fact that I know about this investigation, only those necessary to establish probable cause to believe the seized property are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## AGENT BACKGROUND AND TRAINING

2. I am an OSP Senior Trooper and currently assigned as a Detective in the Criminal Investigations Division (CID), Drug Enforcement Section (DES). In that capacity, I presently serve as a member of the Portland Regional Organized Crime and Drug Task Force (PDX-TF). PDX-TF is a coordinated effort by local and federal law enforcement officials to reduce illegal drug trafficking, money laundering and related crimes in the Portland metropolitan area,

**Declaration of Mathew Fromme**                                                                                            **EXHIBIT A   PAGE 1**

specifically those areas directly related to air transportation with primary emphasis at the Portland International Airport (PDX). In October 2018, I was sworn and deputized as a TFO with the FBI and assigned to the PDX-TF.

3. Prior to my time with the PDX-TF, I served as a member of the Clackamas County Interagency Task Force (CCITF) from 2011-2018. In 2008, Clackamas County was designated as a High Intensity Drug Trafficking Area (HIDTA). CCITF is a coordinated effort by local and federal law enforcement officials to reduce illegal drug trafficking and related crimes in Clackamas County, Oregon, and the Portland metropolitan area.

4. As a Detective and TFO, I have participated in over 100 narcotics investigations and more than 50 search warrants seeking evidence of violations of Chapter 475 (Controlled Substances) of the Oregon Revised Statutes (ORS) and the Federal Controlled Substances Act, Title 21, of the United States Code (USC). These warrants covered the search of locations such as: residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; parcels and locked containers and cellular phones associated to criminal conspirators and co-conspirators associated to the violations of the above listed controlled substance statutes.

5. I have been a certified police officer in the State of Oregon since December 2, 2007. I have received over 2,300 hours of police training, which include controlled substance classes offered by OSP and the Oregon Department of Public Safety Standards and Training (DPSST). I have attended the 80 hour Basic Narcotics Investigators course offered by the Drug Enforcement Administration (DEA). I have also attended a sixteen (16) hour marijuana cultivation course administered by the Royal Canadian Mounted Police (RCMP) and I have received a variety of controlled substance and interdiction related training from the Oregon Narcotics Enforcement Association (ONEA), the California Narcotics Officers Association (CNOA) seminars, the

International Narcotics Investigations Association (INIA) and the DEA's Operation Jetway Interdiction training.

## BACKGROUND ON UNLAWFUL MARIJUANA GROWING OPERATIONS

6.  I know from my training and experience that Oregon has an abundance of high quality marijuana which has pushed the price for marijuana much lower here than in other parts of the country.  I am familiar with the Oregon recreational and medical marijuana programs and know, based on numerous marijuana related investigations throughout my career in drug enforcement, that marijuana growers can exploit the marijuana growing regulations by growing more than the allotted amounts allowed by Oregon state law and sell the excess for profit.

7.  I also know that individuals from across the United States who sell marijuana can obtain marijuana in Oregon for a depressed price, often from medical marijuana or black market providers.  These individuals will travel to Oregon and then ship the marijuana back to the area in which they travelled from in parcels, often overnight or next day air.  These individuals will then sell the marijuana where they live for a much higher price, making a substantial profit.  I know that individuals engaged in the above practice will then take the proceeds of the sales of marijuana and bring it to Oregon to purchase more black market marijuana to continue their illegal activities.

8.  Based on my training and experience, I know that with the abundance of marijuana in Oregon, local residents often process excess marijuana into various extracts, such as Butane Hash Oil (BHO).  BHO is a marijuana extract that is favored by cannabis users because of its high tetrahydrocannabinol (THC) content.  I know BHO is illegal to possess in Oregon unless the BHO was produced by an approved facility authorized by Oregon state law, and is illegal to manufacture unless the BHO was manufactured in a facility authorized by Oregon state law.  I know BHO is illegal to possess or manufacture federally.

**Declaration of Mathew Fromme**                                    EXHIBIT A   PAGE 3

## SUMMARY OF INVESTIGATION

9. On Monday, February 4, 2019, the Honorable Judge Todd L. Van Rysselberghe with the Clackamas County Circuit Court authorized the search warrant for the residence located at 16717 Southeast Amisigger Road, Boring, Oregon.

10. This warrant was presented based on my ongoing criminal investigations into the unlawful manufacturing, distribution and possession of marijuana that I believed to be occurring at that address. During law enforcement surveillance of the Amisigger Road property, I noted a Dodge diesel truck and a Dodge Sprinter style van on the property, both registered to Samuel Kagan Stocks-Ladd. I suspected Stocks-Ladd to be residing at the property of the unlawful marijuana growing operation.

11. On February 6, 2019, members of the PDX-TF and the FBI executed the search warrant at the residence and outbuildings and made contact with two people. Stocks-Ladd was contacted inside the residence and was found to be residing there. The other individual at the property during the execution of the search warrant was Mason Guy Obrist, who was found sleeping on a couch in one of the property's outbuildings, which also contained a marijuana growing operation. I arrived on scene after the execution of the warrant and learned the following.

12. I learned that prior to the execution of the search warrant, surveillance of the Amisigger Road property showed Stocks-Ladd driving away from the property. The surveillance lost Stocks-Ladd after he left and was not able to follow him away from the residence. Stocks-Ladd returned to the residence just prior to the search warrant execution and approached an awaited surveillance unit and asked them if they were going to raid his house. Of note, Stocks-Ladd arrived back at the Amisigger Road property on foot.

13. After I arrived at the residence, I spoke with Sergeant Lance Hemsworth. He told me that he had been speaking to Stocks-Ladd, and he also told me what investigators were finding in the house. I was told (and could myself see and smell) a large amount of marijuana inside the residence. I later learned rooms in the residence were dedicated to the processing of bulk marijuana, including marijuana trimming areas and many five gallon buckets and large totes that were being used to capture the marijuana bits and buds.




14. I also learned during the investigation that the garage at the Amisigger Road property contained a BHO lab. Based on these observations and my knowledge and experience, I believe Stocks-Ladd was processing marijuana that was being grown at the Amisigger Road property into BHO in the garage lab.





15.     When I made contact with Stocks-Ladd, he was seated in his living room and he was not handcuffed. Having learned from Sergeant Hemsworth that Stocks-Ladd had been read a copy of the search warrant and advised of his Miranda warnings, I introduced myself and the reason for our contact at the residence. I told Stocks-Ladd that I was the case agent for this particular search warrant and told him that this search warrant was not the first one we had executed that day. I also told Stocks-Ladd that I was simply gauging his cooperativeness prior to asking him any questions and if he wanted to lie to me, or tell me he was not involved in the unlawful marijuana business that I would stop talking to him and he was of no interest to me. I

also told him if he wanted to speak to me it would have to be honest and that I knew a lot more than he thought I may know about him and his current situation.

16. Stocks-Ladd asked me what I wanted to know. I asked him to tell me about himself first. He told me he was trying to become a professional fishing guide. I asked him if he was currently employed and he stated he was not. I asked him when was the last time he was a guide and he told me 2008. He told me that when he was fishing guide in 2008, he was never licensed, but that he was trying to become professional guide on the Clackamas River for Steelhead, specifically Spay Rod fishing.

17. Having been an OSP Trooper assigned to the Fish and Wildlife Division for a few years prior to my current assignment in the Drug Enforcement Section, I told Stocks-Ladd that I knew about the Steelhead run on the Clackamas River and Spay Rod Fishing and in my opinion seemed to be a poor business decision because the Steelhead run on the Clackamas River is very limited and Steelhead are hard to catch. He agreed. I asked him when the last time he was paid for fishing and he told me in 2008. He also told me that he worked for a marijuana business a number of years ago.

18. Stocks-Ladd told me he has been renting the house at the Amisigger Road property for more than two years from Cody Lamb. He stated that he used to have a roommate, but that was more than a year ago. He told me he pays $2,000 a month for rent, even though he does not have a job.

19. During my time with Stocks-Ladd, I learned that Stocks-Ladd's residence at the Amisigger Road property contained hundreds of pounds of dried marijuana in various stages of production or processing, including several rooms dedicated to the drying process. I also learned that there was a marijuana grow operation on the property. I learned this because investigators

**Declaration of Mathew Fromme**   EXHIBIT A   PAGE 7

told me the large barn on the property contained a marijuana growing operation and I later went and looked at the growing operation. Stocks-Ladd told me the marijuana drying inside the residence was from a different grow not occurring on the Amisigger Road property. I told him I thought that was hard to believe. I explained that he had hundreds of pounds of marijuana in his house and a marijuana growing operation nearby, and to tell me he had no connection to the marijuana grow on the property seemed untrue. Stocks-Ladd stated that he received green bud/marijuana from people for the sole puropse of manufactoring the bud into BHO for consideration. Stocks-Ladd admitted that he had been involved in the cultivation of marijuana for more than a decade. He said it was profitable to sell marjauna back in the medical marijuana days of the early 2000s but that it was not very profitable any longer. He said he got sued civilly for the "noxious odor" which effectivly shut his "medical grow" down years ago. He admitted that he paid a company nearly $40,000 a couple years ago to buy and install the BHO lab in his garage. He admitted that all the BHO equipment, supplies, and product were his alone. He tried to say that the BHO was not very high quality so he had to produce more and more to stay profitable.

20.     Stocks-Ladd admitted that he is an avid BHO user but also admitted that he manufactored BHO for people for profit and sold it for a living. He would not admit that he personally sold BHO outside of Oregon but admitted that some of the people he manufactured the BHO for may be selling it outside of Oregon.

21.     Stocks-Ladd maintained that he did not have any connection to the nearby marijuana grow operation and that it was not his and the marijuana in the house was from his previous marijuana growing operation that had been shut down years ago. I again explained that based on my training and experience with marijuana, marijuana does not maintain over several years and the marijuana in his home appeared to be recent, not several years old. Stocks-Ladd

**Declaration of Mathew Fromme**                                          **EXHIBIT A    PAGE 8**

consented to a download of his phone and a search of the contents. I later reviewed the contents of his phone and learned the phone contained several photographs and evidence relating to marijuana and marijuana cultivation.

22.     During the execution of the search warrant, $4,000 cash and approximately 300 pounds of processed and/or bulk marijuana was seized from the Amisigger Road property.

23.     Based on my training and experience interdicting passengers at the Portland International Airport (PDX) who are traveling from across the United States for purposes of purchasing black market or illicit marijuana market in Oregon, I know a very conservative street value for marijuana is approximately $500 per pound. More typically, marijuana traffickers are paying an average of approximately $1000 per pound for Oregon marijuana, and at times more than $1000, based on the quality of the marijuana. Stocks-Ladd disclosed that the marijuana he had in his house was not good quality, but based on his admissions and my current knowledge of black market marijuana prices in Oregon, the value of the bulk marijuana seized from Stocks-Ladd is between $150,000 and $300,000.

24.     The BHO lab in the Amisigger Road garage contained approximately 15 pounds of processed BHO sheets and 25 mason jars containing BHO, all located near the lab equipment. Stocks-Ladd stated that he paid between $30,000 and $40,000 for the lab equipment a couple of years ago and that he owns the equipment. When asked if the slabs of BHO were in fact extractions made from carbon based solvents (the illegal method of extraction), Stocks-Ladd indicated they were.

25.     I know from my training and experience that, depending on the quality of BHO, BHO can be sold for several thousand dollars per pound. Although Stocks-Ladd again claimed the BHO quality was not great, I know a conservative evaluation of the street value of the solid

**Declaration of Mathew Fromme**                                                          **EXHIBIT A   PAGE 9**

pounds of BHO (as opposed to BHO separated into smaller pieces for increased profit) are approximately $3,000 per pound, totaling $45,000 in street value for the BHO slabs found in the garage.

26. I know the BHO and lab equipment were in the same three car garage with a 1971 Chevrolet Chevelle, later appraised professionally at approximately $31,100, and a 2006 Dodge Sprinter Van, valued at approximately $7,000 online (which is likely a conservative estimate, given that the Sprinter Van contained lab equipment, specifically a stainless steel tank in the cargo area). This equipment also indicates that the Sprinter Van was used in the commission or facilitation of the processing of the BHO in the lab equipment which was staged just behind the Sprinter Van.

27. I also know that near the Chevelle and the Sprinter Van in the garage were two Harley motorcycles, one 2004 Harley professionally appraised at approximately $3,750, and a 1993 Harley also professionally appraised at approximately $6,100.

28. I know the titles to all of these vehicles, in addition to a 2012 Cadillac CTS-V parked just outside the garage and valued at approximately $26,800, were located inside Stocks-Ladd's residence. I know when a purchaser has actual possession of the title to a vehicle, they own it outright. If a lienholder has a stake in the vehicle, then the lienholder has physical possession of the titles. In this case, Stocks-Ladd had physical possession of the titles to the seized vehicles, indicating he owns them outright. I believe the vehicles do not have liens on them, indicating that the liens were either been paid off or the vehicles were purchased with cash.

29. I know marijuana trafficking is a cash intensive business and I also know Stocks-Ladd has not been employed in quite some time. Based on Stocks-Ladd's possession of approximately $200,000-$250,000 worth or marijuana products, more than $10,000 worth of high

end firearms, $30,000-$40,000 worth of paid off lab equipment, and approximately $80,000 worth of paid off vehicles, and his ability to pay at least $2,000 per month in rent, in spite of having been unemployed for approximately 10 years, I believe the seized vehicles mentioned above were all obtained by proceeds from marijuana sales.  I also believe, based on my analysis of Stocks-Ladd's cellular phone, that the modifications Stocks-Ladd was making to his Sprinter Van to make it a mobile home, modifications made to the Cadillac CTS-V for impressive top speeds and overall appearance, and the quality of the 1971 Chevelle's restoration, are all very expensive modifications.  I believe the money used to complete these restorations and modifications were proceeds from drug trafficking based on Stocks-Ladd's own admission of unemployment for the past decade or more and his admission to processing BHO for sale and the evidence found during the execution of the search warrant.



**Declaration of Mathew Fromme**                                                      **EXHIBIT A   PAGE 11**





False book case with hidden room     Safe in room with BHO on top[1]     Prepackaged marijuana ready for sale





## CONCLUSION

31.     Based on the foregoing information, I have probable cause to believe, and do believe, that the 1971 Chevrolet Chevelle, 2006 Dodge Commercial Sprinter Van, 2012 Cadillac CTS, 1993 Harley Davidson FXRP-W, and 2004 Harley Davidson XL 1200C seized from the

---

[1] It should be noted that within the hidden room, and on top of the large safe containing bulk manicured marijuana packaged and ready for sale, were hundreds of Sale Bags of BHO packaged and ready for sale. Each baggie contained the strain of BHO in which it was derived. I know this to be consistant with the distribution of narcotics, specifically BHO.

**Declaration of Mathew Fromme**                                                                **EXHIBIT A   PAGE 12**

Amisigger Road property are subject to forfeiture pursuant to 21 U.S.C § 881(a)(4) and (6), as conveyances used or intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances, or proceeds traceable to an exchange for a controlled substance, in violation of 21 U.S.C. § 801, *et. seq*.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 6th day of February 2020.

*/s/Mathew Fromme*
MATHEW FROMME
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATIONS

℔JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | **PERSONAL INJURY** | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____